UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EVA MARIE HIGGINS,

        Plaintiff,

v.                                          Case No. 22-cv-1128-bhl

KILOLO KIJAKAZI,

        Defendant.

## DECISION AND ORDER

    Plaintiff Eva Marie Higgins' quest for Social Security benefits now spans nearly a decade. She first applied for Social Security Disability and Supplemental Security Income on June 6, 2013. Ten years on, she has received four ALJ decisions of varying favorability and made three trips to federal court. Initially found not disabled at all, Higgins has succeeded over time in changing the narrative. The last ALJ to hear her case not only found her disabled but also pushed her disability onset date all the way back to May 31, 2016. Hoping for even greater relief, Higgins commenced this appeal, asking for another reversal and remand. But the ALJ's decision contains no reversible error and will therefore be affirmed, finally bringing this saga to an end.

## PROCEDURAL BACKGROUND

    Higgins applied for Social Security Disability and Supplemental Security Income on June 6, 2013, alleging a disability onset date of December 15, 2012. (ECF No. 9 at 1.) Her claims were denied initially and on reconsideration, so she sought a hearing before an administrative law judge (ALJ). (*Id.*) That hearing occurred on June 20, 2016 and resulted in an unfavorable decision, which Higgins took to the Appeals Council, who remanded for further consideration. (*Id.*) A second hearing took place on February 26, 2018. (*Id.*) This time, Higgins received a partially favorable decision, finding she had become disabled as of April 10, 2018 but no sooner. (*Id.* at 1-2.) Unsatisfied, she again went before the Appeals Council. (*Id.* at 2.) When the Council denied review, Higgins appealed to federal court. (*Id.*) This led to another remand, on July 1, 2019, by stipulation of the parties. (*Id.*) As a result, a third hearing before an ALJ occurred on January 14, 2020. (*Id.*) About two months later, Higgins received another partially favorable decision, altering

the date she first became disabled to December 31, 2017. (*Id.*) She again appealed to federal court, and the case was again remanded by stipulation. (*Id.*) Thus, on February 1, 2022, Higgins received a fourth hearing before an ALJ. (*Id.* at 2-3.) That precipitated another partially favorable decision, which found her disabled as of May 31, 2016. (*Id.* at 3.) It is the propriety of that latest decision that is now before the Court.

## FACTUAL BACKGROUND

In a May 31, 2022 decision, the latest and fourth ALJ to hear Higgins' case found that, since her alleged onset date of December 15, 2012, she "had the following severe impairments: degenerative joint disease of the bilateral hips, disorders of the spine, obesity, pain disorder with psychological and physical factors, anxiety, major depressive disorder, adjustment disorder and conversion disorder." (ECF No. 8-4 at 97-98.) The ALJ further found that, beginning on May 31, 2016, the severity of these impairments met the criteria of several listings found in 20 C.F.R. Part 404, Subpart P, automatically establishing disability. (*Id.* at 111.) Prior to May 31, 2016, however, Higgins was determined to have had the residual functional capacity "to perform sedentary work" subject to several limitations. (*Id.* at 101.)

## LEGAL STANDARD

The Acting Commissioner's final decision on the denial of benefits will be upheld "if the ALJ applied the correct legal standards and supported his decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. §405(g)). Substantial evidence is not conclusive evidence; it is merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* In rendering a decision, the ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (citation omitted).

In reviewing the entire record, the Court "does not substitute its judgment for that of the [Acting] Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943)).

**ANALYSIS**

Higgins challenges six aspects of the ALJ's decision, though several of her arguments are so perfunctory they could be deemed waived. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001). Nevertheless, the Court will endeavor to address every claim, to the extent it can extract meaningful arguments from Higgins' vague gestures in the direction of Seventh Circuit caselaw. As best it can discern, the Court understands Higgins to contend: (1) the ALJ's residual functional capacity (RFC) analysis did not address Higgins' moderate limitation in concentration, persistence, and pace; (2) the ALJ improperly used May 31, 2016 instead of October 30, 2015 as the date Higgins first became disabled; (3) the ALJ did not base his RFC on any doctor's opinion; (4) the evidence the ALJ relied on did not support his RFC; (5) the ALJ mistakenly conflated third-party observations with an ability to work full time; and (6) the ALJ did not include a narrative discussion as required under the Social Security regulations. (ECF No. 9 at 17-28.) None of these complaints establishes a basis for remand. The Acting Commissioner's decision will, therefore, be affirmed.

**I.     The ALJ's RFC Assessment Addressed Higgins' Moderate Limitation in Concentration, Persistence, and Pace.**

A claimant's RFC is "an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). And "[i]f the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 (July 2, 1996). In other words, the ALJ must build a "logical bridge" between the evidence of record and the RFC assessed. *See Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008).

Here, the ALJ determined that, prior to May 31, 2016, Higgins had the RFC:

> to perform sedentary work . . . except she needed to be allowed to sit or stand at will so long as she was not off task more than 10% of the work period; no climbing of ladders, ropes or scaffolds; she must avoid concentrated exposure to unprotected heights, hazards and use of dangerous moving machinery; and she was limited to simple work tasks, with only occasional interaction with the public.

(ECF No. 8-4 at 101.)  Higgins argues that this RFC failed to address her moderate limitations in concentration, persistence, and pace.  The ALJ explicitly noted, "[w]ith regard to concentrating, persisting, or maintaining pace, [Higgins] had a moderate limitation before the established onset date."  (*Id.* at 100.)  He addressed this by restricting her to "simple work tasks."  (*Id.* at 103) (finding that Higgins was "limited to simple work tasks" because of her "moderate paragraph B limitations," including a limitation in concentration, persistence, and pace).  Higgins' position appears to be that a restriction to simple work tasks does not accommodate a moderate limitation in concentration, persistence, and pace.

The Seventh Circuit has cautioned ALJs not to confuse "the ability to stick with a given task over a sustained period" with "the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).  The former addresses deficits in concentration, persistence, and pace, while the latter concerns degree of difficulty, and the two are not coextensive.  For that reason, the court has previously reversed ALJ decisions in which the ALJ's RFC confines claimants "to simple, routine tasks," which might not "adequately capture[] temperamental deficiencies and limitations in concentration, persistence, and pace."  *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014); *see Mischler v. Berryhill*, 766 F. App'x 369, 376 (7th Cir. 2019).  But that precedent is not applicable here for at least two reasons.

First, it is not categorically incorrect to address limitations in concentration, persistence, and pace by restricting a claimant to simple, routine tasks.  "Even generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record."  *Urbanek v. Saul*, 796 F. App'x 910, 914 (7th Cir. 2019) (quoting *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)).  This is especially true where a medical professional explains that a claimant "could perform at a consistent pace . . . if . . . engaged in [] simple, repetitive tasks."  *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (internal quotations omitted).  At Higgins' February 1, 2022 hearing, the ALJ asked Medical Expert Dr. Nancy Winfrey what kind of RFC restrictions could accommodate Higgins' limitations prior to May 31, 2016.  (ECF No. 8-4 at 198-99.)  Dr. Winfrey replied: "Simple and routine repetitive work only."  (*Id.* at 199.)  The ALJ's reliance on this expert testimony is substantial evidence in support of his RFC determination.

Alternatively, even if the ALJ had committed error, it would have been harmless. Higgins' one-paragraph argument hypothesizes no additional restrictions she might have required. Under identical conditions, the Seventh Circuit has rejected a claimant's request to remand. *See Jozefyk*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address [the claimant's] limitations in concentration, persistence, or pace because he hypothesizes none."). Higgins' first ground for remand, thus, fails.

## II. Substantial Evidence Supports the ALJ's Decision to Use May 31, 2016 as Higgins' Disability Onset Date.

Higgins believes the record required the ALJ to find that her psychological impairments met criteria establishing disability as of October 30, 2015, rather than May 31, 2016. The dispute over these dates arose because of Dr. Winfrey's somewhat mercurial testimony at the February 1, 2022 hearing. When initially asked to confirm that Higgins first met "the listing levels [for disability] as of May the 31st, 2016," Dr. Winfrey responded: "Yes, May 31st, 2016. That is right." (ECF No. 8-4 at 198.) She selected this date because it coincided with Dr. Matthew Herald's evaluation, which found Higgins markedly limited in several functional areas. (*Id.* at 196.) Later in the hearing, Higgins' attorney pointed out that Dr. Herald had actually first met with and assessed Higgins on October 30, 2015. (*Id.* at 200.) When she learned of this, Dr. Winfrey stated: "We can maybe use that date." (*Id.*) After further discussion, she expounded: "I am willing to use [the October 30, 2015] date. The date I wanted was [May 31, 2016] when [Dr. Herald] gave the ratings, which was later than that." (*Id.* at 205.) She then added: "I am willing to go back . . . because . . . it was a pretty good detailed initial session. I am willing to go back to his first meeting." (*Id.*) Despite this, the ALJ ultimately adopted May 31, 2016 as Higgins' disability onset date. He explained why he did this:

> "[Dr. Winfrey's] final agreement with counsel that the claimant could be considered disabled as of October 30, 2015 is given little weight, as this discussion was more of a negotiation on the record with the representative for the latter's preferred date, is not as consistent with the overall evidence . . ., and does not represent the best judgment of the expert witness."

(*Id.* at 106.) Higgins rejects this characterization of the hearing and insists the ALJ erred in clinging to the May 31, 2016 date that Dr. Winfrey appeared to recant.

Higgins' view is not illogical. A disability onset date of October 30, 2015 certainly finds substantial support in the record. But given Dr. Winfrey's tentative testimony, the Court cannot

say the ALJ was wrong to use the May 31, 2016 date she first proposed. To the very end, the doctor distinguished what she was "willing" to do from what she "wanted" to do. But the choice was not ultimately hers; it belonged to the ALJ. *See Seamon v. Astrue*, 364 F. App'x 243, 247-48 (7th Cir. 2010). And his choice must be upheld so long as it is supported by substantial evidence. This is true "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Under this deferential standard of review, October 30, 2015 was a possible "right" answer, but that did not render May 31, 2016 the "wrong" answer. Substantial evidence supports either one. There is, thus, no reason to remand.

## III. The ALJ's RFC Appropriately Incorporates Record Evidence.

In a stunted, four-sentence argument, Higgins' alleges that the "physical residual functional capacity" was "made up by the ALJ" and "not based on the opinion of any doctor." (ECF No. 9 at 21.) To the extent Higgins argues that an ALJ's RFC must quote verbatim from a medical opinion, she is wrong. *See Recha v. Saul*, 843 F. App'x 1, 4 (7th Cir. 2021) ("[A]n ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations."). It is also incorrect to suggest that the ALJ did not examine and discuss the medical opinions of doctors who evaluated Higgins' physical symptoms. (ECF No. 8-4 at 106-08.) If the theory is that the ALJ "played doctor" and made his "own independent medical findings," one would expect Higgins to identify when and where this took place. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). But she has not. In short, no matter which way the Court reads Higgins' imprecise contentions, they do not amount to a reason for remand.

## IV. The ALJ Cited Sufficient Evidence in Support of His RFC Assessment.

Higgins' fourth argument is that none of the evidence the ALJ relied on when crafting his RFC actually supports that RFC. She highlights the opinions of Dr. Herald, Dr. Lauri Gebhard, and physical therapist Kent Carlson, and asserts that they all established the need for a more restrictive RFC prior to May 31, 2016. But the ALJ considered these opinions and assigned them little weight, as was his prerogative. (ECF No. 8-4 at 107-09); *see Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence."). The Court cannot say he did so without substantial support.

With respect to Dr. Herald, the ALJ actually afforded his opinions from May 31, 2016 onward "special importance." (ECF No. 8-4 at 108.) It was only opinions for the period before that date (and consequently before Dr. Herald and Higgins established a treating relationship) that the ALJ gave "limited weight." (*Id.*) And he properly explained why he did so, stating that those opinions were inconsistent with and unsupported by the objective medical evidence, Higgins' level of treatment, and her admitted daily activities. (*Id.*) The ALJ gave Dr. Gebhard's opinions little weight for similar reasons. (*Id.* at 109-10.) He also found troubling that her treatment notes for the relevant period were lost in a flood. (*Id.* at 110.) And he emphasized Dr. Winfrey's testimony, which characterized Dr. Gebhard's opinions as "extreme" and "without much explanation." (*Id.*) The ALJ also found Kent Carlson's extreme opinions inconsistent with and unsupported by the evidence in the record. (*Id.* at 107-08.) Additionally, he noted that Carlson was not "an acceptable medical source." (*Id.* at 107.)

The ALJ was dutybound to assess and weigh the medical opinions in the record. When, as here, his decision is supported by substantial evidence, the Court must not second guess it.

## V. The ALJ Did Not Conflate Third-Party Observations with an Ability to Work Full Time.

Higgins next suggests that the ALJ drew the wrong conclusions from the third-party statements submitted by her husband, Thomas Higgins, and her downstairs neighbor, Katherine Romanski. Though again poorly developed, her argument seems to be that the ALJ interpreted these statements as confirmation of her ability to sustain full-time employment. The ALJ, however, never made that claim. Instead, he primarily used the statements to demonstrate inconsistencies in the record. For example, Dr. Gebhard opined various extreme limitations. (ECF No. 8-4 at 109.) The ALJ, in part, afforded these opinions little weight because they were in tension with Mr. Higgins' first-hand observations of his wife's ability to "drive, read, use a computer, watch television," etc. (*Id.*) This is entirely proper. *See Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is . . . inconsistent with other evidence."). The Seventh Circuit does not suffer ALJs who conflate an ability to perform daily activities with an ability to work full-time. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). But it has never suggested that an ALJ cannot underscore and extrapolate from discrepancies between daily activities and other opinions in the record.

## VI. The ALJ Included an Appropriate Narrative Discussion.

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7. According to Higgins, the ALJ in her case flunked this part of his assignment. This is another perfunctory argument that could do with some explication. It seems the claim is that the ALJ neglected Higgins' pain disorder when assessing her RFC. (ECF No. 9 at 27-28.) The record belies that assertion. In fact, the ALJ actually assessed an RFC *more restrictive* than state agency medical consultants Drs. Patricia Bush and George Walcott because of Higgins' "subjective reports of persistent symptoms and ongoing pain management." (ECF No. 8-4 at 106.) The ALJ also specifically addressed Higgins' pain disorder and how it interacted with her "alternating periods of good control and exacerbation of her mental health symptoms." (*Id.* at 104.) This satisfies the narrative discussion requirement. *See Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) ("The ALJ satisfied the discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence.").

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that that pursuant to sentence four of 42 U.S.C. §405(g), the decision of the Acting Commissioner of the Social Security Administration is **AFFIRMED**, and the case is **dismissed**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on May 18, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge